May I please the court? Good morning. My name is Tom Hoytel. I'm court-appointed counsel for Michael Rocky Lane in this case. This is a criminal conviction from the District of Arizona, a conviction on two counts of conspiracy and possession with intent to distribute controlled substance analogs. It involves an interpretation of the Analog Act. For purposes here, the main elements of the Analog Act that are involved are the chemical structure being, quote, substantially similar to a controlled substance in Schedule I or II of the statute, and, number two, the pharmacological effect being, quote, substantially similar or greater to a Let me ask you a question on that. Just is there a difference, if any, between the Analog Act and the sentencing guidelines regarding whether a drug is substantially similar to a controlled substance? Because the guidelines say the most closely related as opposed to substantially similar. Yes, Your Honor. I'm going to get into that. Okay. There is a difference in that the statute doesn't say most closely related. The sentencing guideline uses the term most closely related, but that's one of the substance called pyrovalerone, which was found in some of the substances that were involved in this case. Mr. Lane was a manufacturer of so-called bath salts. No, but the statute controls the trial, right? That's correct. But the issue here, it was the issue in our brief, had to do with whether the Court's judgment was a constitutional error in this case. We submit that it was, because the statute does not define what the term substantially similar means. I just, for enlightenment, I Googled substantially similar last night, and the one of the things that came up was a writer who said that another approach to distilling the meaning of substantially similar is to attempt to convert the concept to a percentage to percentage measurements, that is, more than 50 percent or something like that. Some could argue that substantial should be viewed as merely large, even perhaps the largest. So the defense in this case presented an opening statement, made a statement about being presenting evidence of pyrovalerone being the most closely related substance to the charged substances. The district court prevented the defense from introducing patents for pyrovalerone, which would have shown that, at least with respect to two or three of the substances charged, the patents included those particular substances in the patent for pyrovalerone. The district court's position was, we're not here to decide what the most closely related substance is. We're only here to decide whether the substance is substantially similar. So you weren't allowed to put some evidence in, but both sides put experts in, correct? Both sides had experts. On what's substantially similar. And your experts said that what the government's position was, you put on expert testimony, that they weren't substantially similar, correct? The defense experts disagreed with whether the term substantially similar was a scientific term that had any meaning. Their position was that's not how scientists, how chemists determine the relationship between chemicals.  make a determination on whether something is substantially similar or not. But they did testify, to some extent, on pyrovalerone, and did testify, both the government's experts and the defense experts did testify that pyrovalerone would be an analog of the substances that were involved. The problem was the district court concluded that the defense could not argue this, nor present the patents. It excluded the patents that would have shown that the charged substances were included in the pyrovalerone patent. That was a defense because it would have excluded the charged substances from being covered by the Analog Act because pyrovalerone is a Schedule V controlled substance. And, therefore, because under the Analog Act, the substance had to be substantially similar to a Schedule I or II controlled substance, it could not have been the defendant could not have been convicted if the jury found that the pyrovalerone was the most closely related substance, and not, and it was not a Schedule I or II controlled substance. But does the statute say it has to be the closest? The statute does not say that. That is the problem with the statute, that the statute doesn't define the term substantially similar. And I submit, I can make an argument that substantially similar should include the most closely related substance, and at least that's one interpretation, certainly from what I, what I Googled last night, that that was the interpretation The defense counsel said in opening statement that he was going to present the patents for, the patent for pyrovalerone, and that, that pyrovalerone is, is, the one with the patent is a Schedule V drug. Guess what structures, guess what chemicals are included in this 1960s patent? All of the analogs in this case. Now, maybe the prosecutor is going to try to argue to you, well, it can be really, really substantially similar to a Schedule V drug, but it's not enough for you to convict American citizens if it's a kind of similar, or a little bit, but more similar or a little less similar to a Schedule I or II. That is going to be your chore or job. The problem was the district court wrestling with a very, very vague and, and difficult statute precluded the defendant from arguing or introducing in evidence the patents or from arguing that the defendant was not guilty on these charged substances because they were more closely related to pyrovalerone than they were related to any Schedule I or II substances. Further, on, on the pyrovalerone point, and the courts excluded this evidence under Rule 403, and I pointed out in the brief under the Haysher case that 403 exclusions have to be cautious and sparing. This was clearly not a cautious and sparing exclusion because it prevented the defendant from even arguing this theory to the, to the jury. Further, on the issue of pyrovalerone, the court, the court, Judge Callahan mentioned about the, the sentencing guidelines. The sentencing guidelines do use the term most closely related, and the district court, in excluding the pyrovalerone evidence, implicitly said that pyrovalerone may be the most closely related to the charged substances here. Nevertheless, when it came time for sentencing, the sentencing judge found that the most closely related substance was methcathinone, not pyrovalerone. That had a substantial impact on the sentencing guidelines. I think it went from a level 6 to a level 38 if you used methcathinone as opposed to pyrovalerone. And your position is that is a factual error. Is that right? Well, it's, it's a legal error in that the court used the, the — The wrong, wrong analogy. The wrong interpretation of the sentencing guidelines. Yeah. I thought that, I thought that the district judge excluded the patent information by saying that the prejudice outweighed the probative and that it would just spin off on a whole other, be kind of a waste of time. Rule 403, yes. Yeah. That was, that was relevance in Rule 403 was the, but you can, you can only reach that conclusion if you come to the conclusion that substantially similar can't mean what I suggested it could mean, that is, the most closely related substance as opposed to simply a, a related substance. If you go with — Related to something in Schedule 1 or 2. Something in Schedule 1 or 2, yes. I thought that the evidence you wanted to introduce had to do with something that was related to something covered by Schedule 5. That's pyrovalerone, Schedule 5, a Schedule 5 drug. The defense position was if this substance is most closely related to pyrovalerone, then the defendant is not guilty because the substantially similar means the, the most closely related substance, not simply a related substance. Pardon? We're only talking about closely related to a drug in Schedule 1 or 2 is what the statute says. Well, that's what the statute, the statute says. It has to be substantially similar to a drug in Schedule 1 or 2. That's, that's correct. You're saying that it's more similar to one in Schedule 5, but so what? That's correct. So that if you follow the analogy to the statute, use of the term substantially similar, if that means the most closely related — Substantially similar to something in 1 or 2, it says. Well, if you follow the, the substantially similar, if you interpret that to mean the closest relationship, its closest relationship is not to a Schedule 1 or 2 substance. It's to a Schedule 5 substance, and therefore the defendant is not guilty. That was the defense position. That's what he presented in, in, in opening statement and would have argued had the judge not precluded him from arguing that. Okay. The, the sentencing guideline issue also involves this extremely large increase in the guideline range. There the language is somewhat different, isn't it? It, it says it's a sentence for the one that's closest with the drug. Right. And what the, the district judge said on the sentencing guideline issue was that, that the pyrovalerone was not shown to have the same pharmacological effect as methcathinone. Methcathinone is a stimulant. The evidence was, however, that pyrovalerone was a stimulant as well. The, the government's pharmacological expert testified that pyrovalerone was a, a stimulant. The patent indicated that it was a, a stimulant. I think it, I quoted it. Well, the government, though, also sort of wanted what I would say mix and match the chemical structure and the physiological effects, and the, and the district judge said no. You need to pick, you got to be consistent with the same drug all the way through. That's another, Your Honor, that's another issue in the case of Simon of Error. The issue there is the judge, Judge Campbell, issued an order saying the government could not mix and match. In other words, they couldn't show similar chemical structure to one Schedule I or II substance and pharmacological effect to another Schedule I or II substance. They had to use the same. Well, you thought the district court was right on that, right? The, the district court was correct on that, but the problem is it did not follow through with its, its holding. What it allowed the government to do was present evidence of pharmacological effect similar to cocaine and methamphetamine, whereas the chemical structure was presented as similar to methcathinone and MDPV. The, the, the way, the fig leaf that the district court used was that the government had to show that, that cocaine and methamphetamine had, or that methcathinone and MDPV had the same pharmacological effect as cocaine or methamphetamine. And all the testimony was, was, well, it's a stimulant. And the district court had expressed its, its position that that was simply too general. But then, then allowed the government to go ahead and do it. Maybe I'll reserve. You said all the testimony was what? Pardon me? You said all the testimony was, it's just similar? It's just a stimulant. It's a stimulant. That's, that's the only thing that, that was said was a stimulant. Maybe I'll reserve the remainder of my time then. Good morning. May it please the Court, James Pierce of the United States. As applied to Defendant Michael Lane and the so-called bath salts that he peddled, the Analog Act is not unconstitutionally vague. And the evidentiary rulings that the trial court made were sound, and his below-guidelines sentence was reasonable. I'd like to ---- McFadden is a Supreme Court case that deals with the, the vagueness, right? But McFadden then required a knowledge component to make sure that that wasn't the case, correct? That's right. McFadden didn't, didn't specifically address vagueness. It, it touched on it at the very end of, of Justice Thomas's opinion. It, it discussed the Scienter requirement, the mens rea requirement. In this case, in the Lane case, the district court required the jury to find that Lane knew that what he was distributing was an analog, and specifically knew both the chemical structure and the pharmacological effects. You could help me on this, if you could address the issue of what's your best authority for the proposition that the defense should not be permitted to introduce evidence that a drug is more closely analogous to Schedule V substance than to Schedule I or II? Sure. And let me say that there is very little authority other than the statute itself. In fact, I'm not aware of any authority that is directly on point. But let me back up and address that a bit more broadly. For starters, pyrovalerone, although not relevant as the, as the primary justification of the district court and the government's position here, was all over this trial. It was, indeed, in the opening statement of defense counsel, but it was also injected throughout in cross-examination. In fact, the cross-examination of the government's chemical structure expert, Dr. DeBarnanito, was asked about the U.N. Treaty and about the patent, et cetera. So, and it was also argued at closing argument. But to get to the, to the core of your question, Judge Callahan, the statute requires, under the analog act, that the government prove, in order to qualify something as an analog, that it be, that a given substance be substantially similar in chemical and biological effects to a Schedule I or II controlled substance, Judge Reithart made this point as well. That means that the only relevant question is, or the relevant universe for the analog act purposes, it's different in the Guidelines, is a Control I, a Schedule I or a Schedule II substance. Whether or not something is more closely related or substantially similar to some other substance in some other schedule just isn't a relevant consideration at all. There's no judicial authority that supports the defendant's position. Candidly, there's no judicial authority that supports the position that I'm taking, but there is the plain text of the actual statute itself. Why aren't the Guidelines some indication of how the statute should be interpreted? Because of the very clear difference in how the Guidelines language is. And I'm not talking about substantially similar versus most closely related substance. I'm not sure that one could really deduce a difference. Sotomayor, I would think normally the Guidelines are read in conjunction with the statute, and the statute is read in conjunction with the Guidelines. Except that's right, except when there is a plain language difference, as there is here. The statute says it specifically lists Schedule I and Schedule II. The Guidelines say most closely related substance and does not limit the universe of comparisons. And so that actually permits the defendant, as Blaine was permitted to do here, to introduce evidence, perhaps the patent, the treaty, the regulations that the district court did not permit at trial, to try to persuade the district court judge this is more closely related in both chemical structure and in pharmacological effects. And let me make something factually clear that I think is not coming through clearly on the record. At trial, it was indeed the case that there was evidence suggesting that pyrovalerone was chemically, as a matter of chemical structure, was similar, substantially similar to the analogs. There was not, however, evidence that suggested, at least not uncontroversed uncontroverted evidence that suggested that it was similar as a matter of pharmacological effects. The government expert was cross-examined on it and said I haven't done a study on pyrovalerone. It might be, but I would need some more time, and I need to draw a definitive conclusion. Lane's own expert, expert on chemical structure, said, well, I don't believe pyrovalerone would be a central nervous system stimulant. So, in fact, this idea that pyrovalerone, even assuming that it could serve as a valid comparator under the statute, which clearly under the text it could not, all that the trial evidence established was that it had similarity as to chemical structure, but not as to pharmacological effects. And Lane's failing at sentencing was to not introduce any such evidence. He was not precluded in the way that he was at trial. He could have put on that evidence. I don't know whether that evidence would have been persuasive to the district court or not, but certainly he could have attempted to do so. Instead, he filed something that suggested a closer similarity to something called NND methamphetamine, which wasn't relevant at all for the court. The advantage to, let's just say that if you could establish it, let's say substantially similar is what the statute says. That's how the case is tried, and you were also required to not only show, the district court required you to both do the chemical structure prong, but then also the effects prong of the analog act. So you had to carry that through. Correct. And what you're saying is that you wouldn't have been able to do that with sufficient evidence of if it would satisfy the effects prong. Well, let's be clear. The government was never trying to use pyrovalerone, but yes, that's right. But you tried to argue in front of the district court that you could do the mix and match, but the district court said no, so then you tried it on the theory of substantially similar, both in terms of pharmacological or the chemical structure and the effects, right? Yes. It was always had to be to both of those. The question is whether for chemical structure you could use drug A and for pharmacological effects you could use drug B. The district court said no, you need to use drug A for both chemical structure and for pharmacological effects. Okay. So that's how you try the case under the statute. But then you said at sentencing that the defendant could have presented evidence on the other language that we're talking about, the most closely related controlled substance. Had he done that and convinced the district court that pyrovalerone was the most closely related controlled substance, how would that have affected the sentencing? It would have affected it quite substantially. It would have the calculation in Mr. Lane's opening brief I think is accurate. It would have dropped it down quite a number of months so that he was actually facing something like 14 to 21 months, but he didn't do that, and we don't have the evidence on this record or before the district court that, in fact, pyrovalerone is the most closely related substance. Who has the burden of proving something in the sentencing? Well, it's not entirely clear who has the burden. It's a determination that the PSR makes under Rule 30. The PSR made the determination consistent with the jury's beyond-a-reasonable-doubt finding that the most closely related substance was methcathinone. It then becomes the defendant's burden to object under Rule 32. It's a factual finding that the district court makes. To answer a question you asked, Mr. Hoytel, earlier, the district court went and made its factual finding based on the evidence that it had before it. And, again, the evidence that it had before it was a beyond-a-reasonable-doubt finding for methcathinone, a Schedule I controlled substance with a particular equivalency that the PSR applied, or pyrovalerone, which had a different drug equivalency for which there was no evidence on pharmacological effects presented at sentencing at all. I'd like to actually address one other thing on sentencing, and then, of course, if the Court has any questions, answer those as well. In his reply brief, Mr. Lane suggests that this Court ought to apply the clear and convincing standard at sentencing, but then asked for it in an opening brief, said, well, we'll apply plain error, standard forfeiture doctrine. That means that the forfeiture and waiver doctrine apply, but it doesn't apply    to the clinical trial. The clear and convincing standard shouldn't be used. It frankly doesn't actually matter. We think that given the absence of pharmacological effects evidence for pyrovalerone, that the result is the same under either standard, but that argument, we believe, is waived. If the Court, unless the Court has any other questions, I'm happy to yield the balance of my time. Thank you. Thank you. Do you have about a minute left? Thank you, Your Honor. The government clearly has the burden of proving the increase in the guideline range with the application of methcathinone rather than pyrovalerone. I don't know what they're talking about in terms of lack of evidence of pharmacologic effect. The patents are in the record. They were in the record at the time of sentencing. The Court had excluded them from and allowed them in evidence before the jury, but they were in the record. The patents did demonstrate the stimulant effect of pyrovalerone, so it was there. The patents were excluded, and the only thing I would say on the vagueness issue is I think the prosecutor has demonstrated the vagueness of the statute because you can't determine what substantially similar means. It might mean the most closely. It might not mean that. It might mean simply a substance which is related. Because there's no definition of it, it demonstrates that the statute is vague and that the defense counsel was perfectly – it was perfectly proper for defense counsel to assert the defense that because this is not the most closely related substance that pyrovalerone was, that the defendant is not guilty. It asks that the Court reverse the conviction and remand for a new trial. Thank you, counsel. Thank you. The case is adjourned and will be submitted. The Court will stand and recess for the day.
judges: Reinhardt, Noonan, Callahan